IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2017

FILED
02/27/2018
Clerk of the
Appellate Courts

## BOBBY DANIEL PETTIE v. STATE OF TENNESSEE

Appeal from the Circuit Court for Bedford County
No. 18247-PC     F. Lee Russell, Judge

### No. M2016-01838-CCA-R3-PC

The Petitioner, Bobby Daniel Pettie, appeals from the Bedford County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that he is entitled to post-conviction relief due to numerous instances of ineffective assistance of counsel. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

M. Wesley Hall IV, Unionville, Tennessee, for the appellant, Bobby Daniel Pettie.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert James Carter, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of initiation of methamphetamine manufacture, promotion of methamphetamine manufacture, possession of a firearm during the commission of a dangerous felony, and possession of methamphetamine. State v. Bobby Daniel Pettie, No. M2014-00113-CCA-R3-CD, 2015 WL 351229, at *1 (Tenn. Crim. App. Jan. 28, 2015), perm. app. denied (Tenn. May 14, 2015). The trial court imposed a total effective sentence of twenty-two years, eleven months, and twenty-nine days. Id. This court affirmed the Petitioner's convictions and sentences on direct appeal. Id. Our supreme court declined to review this court's opinion on May 14, 2015.

The evidence at trial established that a Shelbyville Police Department officer observed the Petitioner driving a motorcycle "wearing dark-colored sunglasses" even though it was dark outside. Pettie, 2015 WL 351229, at *1. The Petitioner also matched the description "of a person who had been observed by a Dollar General Market employee making suspicious purchases earlier in the day." Id. The officer followed the Petitioner and "initiated a traffic stop" after observing the Petitioner driving recklessly. Id.

The Petitioner did not have a driver's license. Pettie, 2015 WL 351229, at *1. The Petitioner claimed that he had left his license at his mother's house, which was nearby. Id. The officer explained to the Petitioner that he could arrest the Petitioner for driving without a license, but that he would follow the Petitioner back to the Petitioner's mother's house to "resolve the issue." Id. At the Petitioner's mother's house, the officer smelled an odor consistent with the manufacture of methamphetamine coming from inside the house. Id. at *2. The officer seized the Petitioner and advised him of his rights. Id. The Petitioner consented to a search of the house and a nearby truck. Id.

A glut of material associated with the manufacture of methamphetamine was found in the truck and house. Pettie, 2015 WL 351229, at *2-3. The officer testified at trial that he believed that methamphetamine had recently been made and that the Petitioner had "intended to dispose of the evidence quickly but had not yet done so" due to the state in which he found the materials. Id. at *4. The officer also found "a loaded twelve-gauge shotgun under the rear passenger seat of the [Petitioner's] truck." Id. at *3. Additionally, a small amount of methamphetamine was seized from a jar. Id. at *5. The Petitioner confessed to manufacturing and using methamphetamine, but claimed that he had only done so in Alabama. Id. at *3-4.

On April 8, 2016, the Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed to represent the Petitioner in this matter and an amended petition was filed on June 17, 2016. As pertinent to our review,[1] the petitions alleged that the Petitioner's original counsel failed to investigate several witnesses, failed to inform him of his confession prior to his having rejected a plea offer, and failed to prepare for and raise several legal arguments at his suppression hearing. The petitions also alleged that trial counsel[2] failed to file pretrial motions to dismiss claiming unnecessary delay and vindictive prosecution, failed to raise the issues of the Petitioner's bond revocation and denial of the right to self-representation on appeal, and failed to "adequately argue issues on appeal" regarding the Petitioner's sentencing range.

---

[1] This opinion will only address the factual and procedural background regarding the instances of ineffective assistance of counsel raised in the Petitioner's appellate brief.
[2] Trial counsel represented the Petitioner at trial and on appeal.

Original counsel testified at the post-conviction hearing that she was retained to represent the Petitioner. Original counsel "had multiple meetings" with the Petitioner. She also spoke with the officers involved in the Petitioner's arrest and the Petitioner's mother even though his mother was not present for the search. Original counsel admitted that she had been given the name of a potential witness, "Jimmy," by the Petitioner. Other than "Jimmy," original counsel was not told about any other witnesses to the Petitioner's stop or the search. Original counsel also attempted to identify the Dollar General Market employee who had provided a tip to the police, but she was unable to do so.

Original counsel testified that prior to the suppression hearing, she reviewed the "cite and release" statute and explained to the Petitioner that it was not applicable to his case. Original counsel explained that she chose not to argue that in her suppression motion because she did not think "that was [their] best argument." Rather, original counsel focused on the fact that the house did not belong to the Petitioner and argued that he did not have the authority to consent to a search of the house. Original counsel also testified that she did not separately challenge the Petitioner's confession because there was no dispute that the Petitioner "was read his Miranda [r]ights and he did agree to just talk with [the officer] and be recorded."

Original counsel testified that she knew about the Petitioner's confession and informed him of it "in [g]eneral [s]essions [c]ourt." Original counsel recalled that the Petitioner had "a pretty cordial conversation" with the arresting officer about how to manufacture methamphetamine. Original counsel testified that a copy of the confession was made available to the Petitioner prior to the plea negotiation deadline. A copy of the confession had been mailed to the address provided by the Petitioner, and original counsel later emailed the Petitioner that he could pick up a copy of the confession at her office. Original counsel "also tried to listen to" the confession with the Petitioner, but the Petitioner told her to turn it off "about ten minutes in" because "it was bad."

Original counsel testified that the State agreed not to charge the Petitioner with possession with intent to sale or unlawful possession of a firearm in exchange for the Petitioner's waiving the preliminary hearing, which he did. However, original counsel later testified that she had advised the Petitioner that he could face an unlawful possession of a firearm charge if his case went to trial. In addition, original counsel recalled that the State offered the Petitioner eight years as a Range I, standard offender, which she thought was an excellent offer because the Petitioner qualified as a Range II, multiple offender. Original counsel believed that the State was not aware of several prior convictions the Petitioner had in Alabama when it made the offer. The Petitioner rejected the offer despite original counsel's advice to accept it.

-3-

However, plea negotiations continued until the day before the Petitioner's trial was scheduled to begin. Original counsel testified that she met with the Petitioner the day before his trial was scheduled to begin to convey a final plea offer from the State. The Petitioner then told original counsel that he did not trust her and fired her. Original counsel testified that she warned the Petitioner that if he fired her the day his trial was to begin the trial court would revoke his bond. However, the Petitioner insisted that he did not want original counsel to represent him any longer. Original counsel filed an emergency motion to withdraw that was heard the next day and granted by the trial court.

Trial counsel testified that he was appointed to represent the Petitioner after original counsel was fired. After the Petitioner fired original counsel, a new indictment was filed bringing the simple possession and unlawful possession of a firearm charges. Trial counsel testified that he did not file a motion to dismiss on grounds of undue delay or vindictive prosecution because he did not believe there were legal grounds to support such a motion.

Trial counsel explained that the Petitioner caused any undue delay by firing original counsel the day before his trial was scheduled to begin. Trial counsel further explained that he did not believe there was a case for vindictive prosecution because at the time of the original indictment the State was unaware of the Petitioner's Alabama convictions and the arresting officers had not told the prosecutor about the shotgun.

Trial counsel testified that he saw no reason to challenge the Petitioner's Alabama convictions on appeal because he had researched the issue and determined that they could be used to increase the Petitioner's range. Trial counsel further testified that he filed a motion to reduce the Petitioner's bond, but he did not raise on appeal the Petitioner's bond revocation or the alleged denial of the Petitioner's right to represent himself. Trial counsel noted that he attempted to argue that the Petitioner's stop was not valid due to the "cite and release" statute even though it had not been raised in the suppression motion or motion for new trial. Despite the waiver of this issue, this court addressed the merits of trial counsel's "cite and release" argument and rejected it.

The Petitioner testified that he hired original counsel to represent him and that he gave original counsel a list of potential witnesses. The Petitioner claimed that he initially did not receive a copy of his confession from original counsel because original counsel had mailed it to the wrong address. The Petitioner denied that he asked that his mail be sent to his mother's house rather than his Alabama address. Despite the fact that original counsel was engaged in plea negotiations with the State until the date the Petitioner's trial was scheduled to begin, the Petitioner claimed that he received his confession "almost a month" after plea negotiations had ended. Likewise, the Petitioner claimed that original counsel did not attempt to listen to the confession with him until after plea negotiations had ended.

-4-

The Petitioner testified that he did not remember his confession or know that it was recorded because he was intoxicated during the confession. The Petitioner claimed that he did not initially tell original counsel he was intoxicated during his confession because he did not know there was a confession, but that he told counsel about his intoxication once he received his confession from her. The Petitioner explained that while the officers were searching his truck and his mother's house he "snuck and took" some pills.

The Petitioner testified that he rejected the State's plea offer because he felt that original counsel was pressuring him into accepting the State's offer "so that [she] wouldn't have to represent [him] at trial, because [she] wanted more money." The Petitioner testified that he was prepared to represent himself after he fired original counsel, but that the trial court would only allow him to represent himself after a continuance. According to the Petitioner, if he had been allowed to represent himself the day his trial was originally scheduled, then he would not have been charged with simple possession and unlawful possession of a firearm. The Petitioner testified that he believed these extra charges were added because he fired original counsel.

On July 22, 2016, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court accredited the testimony of original and trial counsel over the Petitioner's testimony. With respect to original counsel, the post-conviction court noted that none of the witnesses that she allegedly failed to investigate testified at the post-conviction hearing. The post-conviction court concluded that original counsel had thoroughly prepared for the suppression hearing and that there "was no failure to present any defensible argument[s] or any useful evidence" at the suppression hearing. With respect to trial counsel, the post-conviction court concluded that there was no legal basis for any of the arguments the Petitioner thought trial counsel should have pursued at trial or on appeal. The post-conviction court reiterated that "the efforts of neither" original or trial counsel "fell below the applicable standard for criminal defense attorneys." This timely appeal followed.

## ANALYSIS

The Petitioner contends that he is entitled to post-conviction relief due to numerous instances of ineffective assistance of counsel. Regarding original counsel, the Petitioner argues that original counsel failed to investigate several witnesses, that she failed to provide the Petitioner with a copy of his confession "in a timely manner," that she "failed to adequately prepare for the suppression hearing," and that she "failed to argue at the suppression hearing the issue of cite and release or the Petitioner's competency at [the] time of [his] confession." Regarding trial counsel, the Petitioner argues that trial counsel "failed to file appropriate motions" such as "a motion to dismiss based on unnecessary delay" or "due to vindictive prosecution," that he failed to "address

[on appeal] the prejudicial bond . . . imposed on [the] Petitioner" or that the Petitioner "was denied the right to represent himself at trial," and that trial counsel "failed to adequately argue issues on appeal specifically dealing with [the] Petitioner's appropriate sentencing range." The State responds that the Petitioner failed to establish that original or trial counsel performed deficiently or that he was prejudiced by their performance.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In reviewing a trial counsel's conduct, we make every effort to "'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Felts v. State, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting Strickland, 466 U.S. at 689).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. "The fact that a particular strategy or tactical decision failed does not by itself establish deficiency." Felts, 354 S.W.3d at 277 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370. The Strickland standard

-6-

has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether appellate counsel's failure to raise an issue on appeal constitutes ineffective assistance of counsel, our supreme court has held that "unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." Carpenter v. State, 126 S.W.3d 879, 887-88 (citing United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993)). "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel" as these are "tactical and strategic choices," which should not be second-guessed. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

The Petitioner failed to present any witnesses in support of his allegation that original counsel failed to investigate possible witnesses. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is the only way the petitioner can establish that failure "to call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id. As such, we conclude that this issue is without merit.

As for the Petitioner's claims that original counsel failed to "timely" inform him of his confession and failed to adequately prepare for the suppression hearing, we note that the post-conviction court accredited original counsel's testimony over the Petitioner's. Original counsel testified that she made the Petitioner aware of his confession "in [g]eneral [s]essions [c]ourt" and that she mailed a copy of the confession to the Petitioner as well as providing him with another copy to pick up at her office. Original counsel also attempted to listen to the confession with the Petitioner. Similarly, original counsel testified that she met with the Petitioner multiple times, spoke with the officers involved in the Petitioner's arrest and the search, and spoke with the Petitioner's mother. The evidence does not preponderate against the post-conviction court's finding that original counsel provided the Petitioner with his confession and adequately prepared for the suppression hearing.

The Petitioner also faults original counsel for not arguing at the suppression hearing that his stop was invalid due to the "cite and release" statute or that he was intoxicated during his confession. Original counsel testified that she reviewed the "cite and release" statute, determined that it was not applicable to the Petitioner's case, and

explained that to the Petitioner. Moreover, this court made the same determination on the Petitioner's direct appeal. See Pettie, 2015 WL 351229, at *10. Regarding the Petitioner's claim that he was intoxicated during his confession, the Petitioner testified that he did not tell original counsel about this until well into the pretrial proceedings because he was unaware he gave a confession. Original counsel cannot be faulted for failing to raise an argument the Petitioner did not bring to her attention. Accordingly, we conclude that this issue is without merit.

The Petitioner argues that trial counsel was ineffective for failing to seek a dismissal of the simple possession and unlawful possession of a firearm charges as a result of vindictive prosecution or unnecessary delay. It is well settled that "'the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecutions'" and that "an initial charging decision is not binding upon the State with respect to the future course of the prosecution." State v. Mann, 959 S.W.2d 503, 510 (Tenn. 1997) (quoting United States v. Goodwin, 457 U.S. 368, 382 (1982)). "Allegations of prosecutorial vindictiveness or selective prosecution in the institution of a prosecution, have constitutional implications that, if proven, may warrant dismissal of the indictment." State v. Skidmore, 15 S.W.3d 502, 508 (Tenn. Crim. App. 1999) (citing Blackledge v. Perry, 417 U.S. 21, 27 (1974)). However, "as long as the prosecutor has probable cause to believe that an accused committed an offense, the determination whether to prosecute rests entirely within the prosecutor's discretion, subject to these constitutional limitations." Id.

Original counsel testified that the State agreed not to bring the unlawful possession of a firearm charge in exchange for the Petitioner's having waived a preliminary hearing, but later testified that she advised the Petitioner that he could still face the charge if his case went to trial. Furthermore, trial counsel recalled that these charges were not initially brought because the investigating officers had not informed the prosecutor about the shotgun and because the prosecutor was unaware of the Petitioner's Alabama convictions. Regardless, the State had probable cause to believe that the simple possession and unlawful possession of a firearm offenses had been committed. Accordingly, we conclude that trial counsel was not deficient for failing to bring a motion to dismiss due to vindictive prosecution or unnecessary delay.

The Petitioner also complains that trial counsel failed to raise on appeal the issues of his bond revocation and denial of right to self-representation. A trial court may revoke a defendant's bond if the defendant "engages in conduct which results in the obstruction of the orderly and expeditious progress of the trial or other proceedings." Tenn. Code Ann. § 40-11-141(b). The trial court viewed the Petitioner's firing of original counsel on the day before the trial was scheduled to begin as an obstruction and revoked the Petitioner's bond. Likewise, for a defendant to exercise his right to self-representation

-8-

the request must be made "in a timely manner," and the right cannot be used "'as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process.'" State v. Hester, 324 S.W.3d 1, 30, 33 (Tenn. 2010) (quoting United States v. Mosley, 607 F.3d 555, 558 (8th Cir. 2010)). Again, the Petitioner did not make his request to represent himself until the day his trial was scheduled to begin. Accordingly, we conclude that this issue is without merit.

Finally, the Petitioner contends that trial counsel "failed to adequately argue issues on appeal specifically dealing with [the] Petitioner's appropriate sentencing range." However, the Petitioner has presented no argument as to why his sentencing range was incorrect. Trial counsel testified that he researched the issue and determined that the Petitioner's Alabama convictions could be used to enhance the Petitioner to a Range II, multiple offender. The evidence does not preponderate against this conclusion. Accordingly, we conclude that the post-conviction court did not err in denying the petition for post-conviction relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE